BROWNING et al., Appellants, v. RICHARDSON, Public Administrator, in charge of Estate of BROWNING, KING & COMPANY, Appellants, and AURELIA KING et al., Appellants, v. RICHARDSON, Public Administrator, in charge of Estate of HENRY W. KING.

**Division One, February 15, 1905.***

1. **ADMINISTRATION: Exception to Settlement: Right to Administer.** Where the exceptions filed to the settlement of a public administrator are to the effect that he is making a wrongful settlement and illegal charges, they necessarily assume that he is the rightful administrator of the estate, and the question of whether or not he had the legal right to take charge of the estate cannot be considered.

2. ————: **Partnership Estates: Commissions.** The public administrator in administering upon a partnership estate is entitled to five per cent commissions on the assets of that estate, and where he is also administrator of the individual estate of the deceased partner he is also entitled to five per cent commissions on the assets of that estate. The fact that a part of the assets of the individual estate comes from the partnership estate does not deprive him of his commissions thereon when that part comes into his hands as the administrator of the individual estate. The services in each estate are different, distinct and independent, and compensation therefor is just as fully and amply provided for by the statute in the one as in the other—the same compensation that by law is allowed to other administrators.

3. ————: **Attorney's Fees: Drafting Inventory.** The "drafting of inventory and appraisement" is mere clerical work, the duty of performing which is, by law, imposed on the administrator, and for which he is compensated in the commissions allowed him by law, and a separate allowance for "legal advice and services" for the performance of that work or in connection therewith is erroneous.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough, Judge.*

REVERSED AND REMANDED (*with directions*).

---

*Note—Decided December 22, 1904; motion for rehearing filed; motion overruled February 15, 1905.

*E. S. Robert* and *Douglas W. Robert* for plaintiffs.

(1) The public administrator had no right to take charge of the partnership estates. R. S. 1899, secs. 7, 8 and 292. (2) The probate court had no power to appoint any one as administrator of any of the estates before the lapse of thirty days, unless those entitled to administer filed a written renunciation, or it was proved by evidence there was no one in the jurisdiction entitled to administer. These two facts are jurisdictional. R. S. 1899, secs. 7 and 8; Mullanphy v. St. L. Co. Ct., 6 Mo. 563; State ex rel. v. Collier, 62 Mo. App. 38; Skeely v. Vurkamp, 30 Mo. App. 49. (3) The contracts of April 19, 1898, and May 4, 1898, are void. A public official must look for compensation only to the law, else bribery and corruption would be the only way of inducing a certain class of public officers to do their duty. State ex rel. v. Brown, 146 Mo. 41; State ex rel. v. Wofford, 116 Mo. 220; Kick v. Merry, 23 Mo. 72; Harrington v. Crawford, 61 Mo. App. 221; 126 Mo. 467; Thornton v. Railroad, 42 Mo. App. 58. (4) The provision that the interest of the deceased partner should continue on in the firm until the end of the year in which he died was valid. Richardson's conduct took this right away from the survivors and yet he asks for five per cent on their interest. Bank v. Tracey, 77 Mo. 594; Edwards v. Thomas, 66 Mo. 468; Nave v. Sturges, 5 Mo. App. 557; In re Shaw, 81 Me. 207; Wild v. Davenport, 48 N. J. L. 129; Downs v. Collins, 6 Hare 437; Scholefield v. Eichelberger, 7 Peters 586; Burrell v. Mandeville, 2 How. 560; Davis v. Christian, 15 Gratt. (Va.) 11; Blodgett v. Bank, 49 Conn. 9; Stanwood v. Owen, 14 Gray (Mass.) 195; Gibson v. Stevens, 7 N. H. 352; Ballantine v. Freylinghaysen, 38 N. J. Eq. 266; Rammbelsberg v. Mitchell, 29 Ohio St. 22; Vincent v. Martin, 79 Ala. 540; Alexander v. Lewis, 51 Tex. 578, 47 Tex. 481; Kirkman v. Booth, 11 Beav. 273; Story on Part. (7 Ed.), sec. 319a; 1 Woerner, Admr., sec. 123.

(5) Five per cent is the utmost any estate is liable for, except the interest of the deceased in the partnership estate where the surviving partner administers. Gregory v. Menefee, 83 Mo. 413; Jacobs v. Jacobs, 99 Mo. 427; Hawkins v. Cunningham, 67 Mo. 418; R. S. 1899, secs. 223, 291. (6) No statute gives any commissions on the interests of the living partners. These statutes must be strictly construed as they are in derogation of the common law. State ex rel. v. Wofford, 116 Mo. 220; Gammon v. Lafayette Co., 76 Mo. 675; Shed v. Railroad, 67 Mo. 687; Smith v. Haworth, 53 Mo. 88; Yankee v. Thompson, 51 Mo. 234; Stone v. Kelley, 59 Mo. App. 214; Ford v. Railroad, 29 Mo. App. 616. (7) Richardson was an administrator *de son tort,* and as such was entitled to no commission at all. McCabe v. Lewis, 76 Mo. 296; Lewis v. McCabe, 76 Mo. 307; In re Frey, 52 Cal. 658; Succession of Miller, 27 La. Ann. 574. (8) We can not be made to pay for attorneys' fees for services rendered Richardson in doing us a wrong, or for work which he should have done himself instead of the lawyers, or for work he could have done that did not require legal skill. He must show the services were a proper charge. In re Knapp, 59 How. Pr. 367; Kingsland v. Scudder, 36 N. J. Eq. (9 Stew.) 284; Reymond v. Dayton, 4 Dem. Sur. 333; Succession of Miller, 27 La. Ann. 574; Succession of McCarty, 3 La. Ann. 517. (9) The court has the power to fix a reasonable attorney's fee, without regard to the evidence. R. S. 1899, sec. 223.

*Rassieur & Rassieur, J. A. & W. W. Henderson* and *W. M. Williams* for defendant.

(1) The public administrator had the right and it was his duty to take charge, not only of the individual estate, but also of the partnership estates. Leeper v. Taylor, 111 Mo. 322; Goodson v. Goodson, 140 Mo. 217; State ex rel. v. Kennedy, 73 Mo. App. 384; R. S. 1899,

secs. 57 and 292, 4th and 5th subdivisions. (2) No
order of appointment by the probate court was re-
quired. Leeper v. Taylor, 111 Mo. 322; In re Hill's
Estate, 77 S. W. 110; Vermillion v. LeClair, 89 Mo.
App. 60. (3) The non-resident widow or next of kin
or surviving partners could not qualify. R. S. 1899,
sec. 56; Denny's Admr. v. Primeau, 35 Mo. 532. (4)
The managers who were employed under a profit-shar-
ing arrangement, but who had no interest in the assets,
and were not liable for the debts, were not surviving
partners; therefore they had no right to administer.
Hughes v. Ewing, 162 Mo. 261; McDonald v. Matney,
82 Mo. 358; Thompson v. Holden, 117 Mo. 118; Kellogg
Newspaper Co. v. Farrell, 88 Mo. 594. (5) Even if
the administrator's action in taking charge was pre-
mature, the right to take charge certainly accrued long
before the filing of the final settlements, in which he
was required to account for the assets which he as-
sumed to administer, and which were in fact distributed
by him. (6) The right of an administrator to act can
not be questioned collaterally. In re Judy, 166 Mo. 13.
(7) When the administrator simply threatens to per-
form his duty according to law, his threat can not
amount to duress. Dausch v. Crane, 109 Mo. 332; Cla-
fiin v. McDonough, 33 Mo. 412. (8) Upon the death
of a partner, the partnership must be administered
under our probate laws. The articles of copartnership
may provide for a continuance of the business, but they
can not dispense with the duty of the administrator
to take charge and so administer the affairs that the
rights of creditors and distributees will be protected.
(9) The articles of copartnership in this case show
that the money of the deceased was to remain invested,
but they also clearly show that the firm was neverthe-
less dissolved. Upon dissolution, administration be-
came necessary. The partnership continued to exist
only in a limited sense. Bank v. Tracy, 77 Mo. 594.
(10) The administrator, administering upon the part-

nership estate, is entitled to five per cent of the whole estate, although a surviving partner would only be entitled to three per cent on the interest of the deceased partner. And, of course, an administrator is entitled to five per cent of the whole assets of an individual estate, no matter from what source derived. R. S. 1899, secs. 291, 223, 57 and 61. (11) The credits for attorney's fees and expenses are presumptively correct. State ex rel. v. Strickland, 80 Mo. App. 405; Meyers v. Meyers, 98 Mo. 270; Ladd v. Stephens, 147 Mo. 342; State ex rel. v. Lankford, 55 Mo. 564. (12) The exceptors, having approved the amounts, before payment, and consented to the payment of the same by the administrator, are estopped from denying the reasonableness or the propriety of these credits. (13) The administrator, even where he acts through a mistake, or without jurisdiction, is nevertheless entitled to be reimbursed. Brown v. McGee's Estate, 117 Wis. 389.

BRACE, P. J.—On the fourteenth of June, 1899, William C. Richardson, public administrator of the city of St. Louis, in charge of the estate of Browning, King & Company, filed in the probate court of said city his first annual settlement in said estate in words and figures as follows, to-wit:

1898.
June, To stock of goods as per appraisement ...... .... ............$182,859.16
" fixtures, as per appraisement.. 6,322.50
" good will, as per appraisement 18,000.00
" accounts as per inventory.... 15,435.18
" cash from sales .............. 25,452.13
" cash from Hatch ...... ...... 453.77

$248,522.74

Cr.

1898.
May 6, By paid J. W. Kennedy, watchman, 1, ...... .... .. ........$ 55.00
May 6, By paid Jos. Roderman, watchman, 2 .... ...... .... ...... 42.50

Browning v. Richardson.

| | | |
|---|---:|---:|
| May 6, By paid Jas. A. Harris, Appraiser, 3 ....... .... ........$ | 100.00 | |
| May 6, By paid Wm. M. Tamblyn, appraiser, 4,........ ...... | 100.00 | |
| May 13, By paid O. W. Roderman, appraiser, 5, .... .. ............ | 100.00 | |
| May 17, By paid A. Marshall, clerk, 6, | 200.00 | |
| May 27, By paid notice of letters, 7,.. | 6.25 | |
| May 31, By paid Wm. C. Browning, distributee, 8, ................... | 108,599.76 | |
| May 31, By paid Edw. W. Dewey, distributee, 9, ...... .......... | 14,392.73 | |
| May 31, By paid Jas. A. Bingham, distributee, 10, ............. .. | 7,977.33 | |
| May 31, By paid Jno. S. Browning, distributee, 11, .. .... .......... | 6,072.84 | |
| May 31, By paid Wm. H. Browning, distributee, 12, ........ .......... | 4,751.22 | |
| May 31, By paid H. K. Browning, distributee, 13, .... .... ........ | 4,751.22 | |
| May 31, By paid Francis King, distributee, 14, .... .. .. ....... | 826.32 | |
| May 31, By paid C. E. Woodruff, distributee, 15, ................. | 1,780.10 | |
| May 21, By paid H. W. King, Admr., distributee, 16, ............... | 81,745.22 | |
| June 15, By paid, John A. Sea, atty., 17 | 150.00 | |
| June 15, By paid Kerr & Tittmann, 18 | 100.00 | |
| June 15, By paid Woerner & Woerner, 19, .... ...... .... ......... | 10.00 | |
| June 15, By paid H. L. Hatch, for appraisers at Kansas City, 20, .. | 210.00 | |
| June 15, By paid S. W. Hutchinson, clerk at Kansas City, 21, ...... | 130.00 | |
| June 16, By paid Henderson & Henderson, attorneys, 22, ........ .. | 3,000.00 | |
| June 16, By paid W. W. Henderson, drafting inventory and appraisement, 23, .. ...... .......... | 500.00 | |
| June 16, By paid witnesses to inventory, 24, .......... .......... | 7.00 | |
| June 16, By paid Wm. C. Richardson, expenses to Kansas City, 25,.... | 69.00 | |
| June 16, By paid W. W. Henderson, expenses to Kansas City, 26 .. | 95.00 | |
| Aug. 9, By paid R. S. Stone, watchman at Kansas City, 27, ........... | 15.00 | |
| Aug. 9, By paid surviving partners, error in cash sales, .......... | 11.23 | |
| 1899. | | |
| June, By paid probate fees, 28 ...... | 265.05 | |
| Comm. & Aff., as per agreem't, | 12,432.13 | $248,494.90 |
| Balance .... ...... .......... | | $    27.84 |

And on the same day the said Richardson, public administrator in charge of the estate of Henry W. King, deceased, filed in said court his first annual settlement in said estate, in words and figures as follows, to-wit:

1898.

June, To amount received from estate
     of H. W. King & Co...........                   $   2,407.05
    To amount received from estate
     of Browning, King & Co......                  81,745.22

                                       $ 84,152.27

### Cr.

1898.

May, By paid notice of letters, 1, ......$      6.25
    By paid W. W. Henderson, drafting inventory, 2, ............    50.00
    By paid witnesses to inventory, 3,     2.00
    By paid certified copy of will and telegram, 4, ........ ..........   10.20
May 31, By paid executors and trustees under will of H. W. King, 5,..  78,306.31
May 31, By paid W. B. Thompson, atty., 6.. .......... .... ....  1,500.00
May 31, By paid commissions as per agreement ........ .... ......  4,207.61
1899.
June, By paid probate fees, 7, ........    8.60
    By paid attorney's fees, this and final settlements, 8 .........   39.50

     Balance ............ ...... ....                 $     21.80

Afterwards on the twelfth of June, 1900, the said Richardson filed his final settlement in each of said estates accounting therein for the small balance remaining in his hands in each, as per his first annual settlements, and on the sixteenth of June, 1900, the following exceptions were filed to his annual and final settlements in the estate Browning, King & Company:

"Now comes the exceptors, William C. Browning, Edward W. Dewey, James A. Bingham, John S. Browning, William H. Browning, H. K. Browning, Francis King, and C. E. Woodruff, and state that they are former partners of the partnership of Browning, King & Company, and as such are distributees of the partner-

ship estate of the said Browning, King & Company; and come the exceptors, Aurelia R. King, Francis King and Cyrus Bentley, and state that they are executors of the last will and testament of Henry W. King, deceased, and that the principal estate of the said Henry W. King, deceased, is being administered in the probate court of Cook county, State of Illinois, and that the said Henry W. King, deceased, was a partner in the said partnership of Browning, King & Company, and that said executors are entitled to the share of the said Henry W. King, deceased, in said partnership.

"That William C. Richardson is the public administrator of the city of St. Louis, and as such is in charge of and administering on the said estate of Browning, King & Company and the individual estate of Henry W. King, and that the administration in this court of the individual estate of Henry W. King is ancillary to said principal administration of his estate in Cook county, Illinois.

"First Exception.

"The exceptors except to the annual and final settlements of the said Richardson, public administrator in charge of said partnership estate of Browning, King & Company, and particularly to the credit of June —, 1899, in the first annual settlement of $12,432.13, for commissions, for the reasons that he is not entitled to the same, either in law or in equity. There is no statute authorizing the collection of commissions by an administrator administering on a partnership estate, other than the surviving partners. That he has no right to any commission on the interest of the surviving partners, and for the further reason that said item includes $4,087.26 of commissions for which he has taken credit in the individual estate of Henry W. King, deceased, and that on said interest he has collected ten per cent.

"Second Exception.

"The exceptors further except to the credit in said first annual settlement taken by said Richardson, public administrator, in charge as aforesaid, for attorney's fee alleged to have been paid to Henderson & Henderson on June 16, 1898, of $3,000, for the reason that the same was never paid and is excessive.

"Third Exception.

"The exceptors further except to the fee alleged in said first annual settlement to have been paid on June 16, 1898, to W. W. Henderson for drawing the inventory and appraisement of $500, for the reason that the same is excessive and the same was never paid in full.

"Fourth Exception.

"The exceptors further except to the credit in said first annual settlement, for money alleged to have been paid on June 16, 1898, to W. W. Henderson for expenses to Kansas City, $95, for the reason that the said administrator of said estate of Browning, King & Company had no business in Kansas City justifying the sending of an attorney thereto, and that said expenses are excessive.

"Fifth Exception.

"The exceptors except to the item of $69, alleged in said first annual settlement to have been paid June 16, 1898, for the expenses of the said Richardson to Kansas City, for the reason that this estate had no business in Kansas City requiring the said Richardson to go thereto, and for the reason that the same is excessive.

"Sixth Exception.

"The exceptors further except to the item of $210 claimed to have been paid in said first annual settle-

ment on June 15, 1898, to H. L. Hatch for appraisers at Kansas City, and further except to the item of $130, claimed in said first annual settlement to have been paid on June 15, 1898, to H. Hutchinson as clerk at Kansas City. And further except to the item of $15, claimed to have been paid in said first annual settlement on August 9, 1898, to R. S. Stone, watchman, at Kansas City, for the reasons that the estate of Browning, King & Company had no property in Kansas City, and therefore the said Richardson had no authority for disbursing said sums.''

And thereafter the following exceptions were filed to his annual and final settlements in the estate of Henry W. King:

''Now come the exceptors, Aurelia R. King, Francis King, and Cyrus Bentley, and state that they are executors of the last will and testament of Henry W. King, deceased, and that the principal estate of the said Henry W. King, deceased, is being administered in the probate court of Cook county, State of Illinois, and that this administration is ancillary thereto, and that the said Henry W. King, deceased, was a partner in the partnership of Henry W. King & Company, and that the exceptors are entitled to the shares of the said Henry W. King, deceased, in both of said partnership estates.

''That William C. Richardson is the public administrator of the city of St. Louis, and as such is in charge of and administering on the estate of Browning, King & Company, Henry W. King & Company, and the individual estate of Henry W. King, and that the administration in this court of the individual estate of Henry W. King is ancillary to said principal administration of his estate in Cook county, Illinois.

''First Exception.

''The exceptors except to the annual and final settlement of said Richardson, public administrator in

charge of said estate of Henry W. King, deceased, and particularly to the item of $4,207.61, commissions, under date of May 31, 1898, in said first annual settlement, for the reasons that he has taken credit therefor in the partnership estate of Browning, King & Company and H. W. King & Company and by reason of taking credit for commissions in all three estates has collected ten per cent on the interest of said King, deceased.

"Second Exception.

"The exceptors except to the credits in said first annual settlement of $50 paid W. W. Henderson, under date of May, 1898, and $39.50, under date of May 31, 1898, both attorney's fees, for the reason that the same are excessive.

"Third Exception.

"The exceptors except to the credit in said first annual settlement of $1,500, paid to W. B. Thompson, under date of May 31, 1898, for the reason that the same is excessive."

On June 23, 1900, the exceptors filed objections to the Hon. William W. Henderson, judge of said probate court, sitting in and passing upon the settlements and exceptions thereto. Their objections were sustained, and the proceedings transferred to the St. Louis City Circuit Court, where, in due course, the issues were tried and judgment rendered in said circuit court, sustaining the first exception to the settlements in the estate of Browning, King & Company, and overruling all the other exceptions thereto, and overruling all the exceptions to the settlement in the estate of Henry W. King. From the judgment sustaining the first exception to the settlement in the estate of Browning, King & Company, and disallowing the credit of $12,412.13 therein excepted to, the public administrator appeals, and from the judgment overruling all the exceptions

to the settlement in the estate of Henry W. King and overruling the second, third, fourth, fifth and sixth exceptions to the settlements in the estate of Browning, King & Company, the exceptors appeal. Like proceedings were had on the final settlement of the public administrator in the estate of Henry W. King & Company, and the issues upon the settlements in the three estates were tried together, but no appeal was taken in that case, which by agreement, is to abide the decision in the case of Browning, King & Company.

The evidence introduced upon the trial tended to prove that Henry W. King was a copartner in a firm doing business in the city of St. Louis under the name of Browning, King & Company, and in Kansas City under the name of Henry W. King & Company. That he and all his copartners were non-residents of the State of Missouri. That the business in these cities was conducted respectively by managers resident therein, who owned none of the capital stock, bore no part of the losses, were not responsible for the debts, and each of whom was interested only in the profits of the concern managed by him. The manager at St. Louis was Daniel C. Young and the manager at Kansas City was Henry L. Hatch.

That on the thirteenth of April, 1898, the said Henry W. King died testate at his residence in the city of Chicago; that by his will duly admitted to probate in said city on the eighteenth of April, 1898, Aurelia R. King, Francis King and Cyrus Bentley were appointed executors thereof.

That on the fifteenth of April, 1898, the said Richardson as public administrator, upon learning of the death of the said Henry W. King, filed in the office of the clerk of the probate court of the city of St. Louis, notice in due form that he had taken charge of the estate of Henry W. King, and on the same day a notice that he had taken charge of the estate of Browning, King & Company, and on the next day filed notice that

he had taken charge of the estate of Henry W. King & Company.

That on the eighteenth of April, 1898, the public administrator, in pursuance of his understanding of his duty as such, took possession of the store of Browning, King & Company and closed the same for the purpose of making an inventory and appraisement of the assets and a sale thereof, at public or private sale, as the probate court might direct. But on its being suggested to him, by those in charge, that the closing of the store would be injurious to the business, he consented after the store had been closed about an hour, that it should be opened and the business resumed, which was accordingly done. In the meantime the public administrator, having learned that the said Henry W. King, deceased, left a will, and having procured a duly authenticated copy thereof as proven in Chicago, he, on the nineteenth day of April, 1898, had the same admitted to probate in the probate court of the city of St. Louis, and on the same day filed other notices in said court that he had taken charge of said estates, and on the same day the surviving partners and the executors of the said Henry W. King, deceased, being desirous that the business of said concerns should continue uninterruptedly under the management of said Young and Hatch, and if need be that the assets of each should be respectively administered by them, appeared in St. Louis by their attorneys and made known their desire in this behalf to the public administrator and to the judge of the probate court. But, upon finding that the public administrator was unwilling to relinquish his administration, and believing that the probate judge was disinclined to take the matter out of his hands, they, without making any formal application for the appointment of any administrator of said estate, entered into the following agreement in writing with the public administrator:

"This agreement, executed in quintuplicate,

entered into this nineteenth day of April, A. D. 1898, between William C. Richardson, public administrator within and for the city of St. Louis, in the State of Missouri, first party; William C. Browning, Edward W. Dewey, James A. Bingham, Charles E. Woodruff, John Scott Browning, Francis King, William H. Browning and Henry King Browning, copartners doing business as Browning, King & Company, second party; and Aurelia R. King, Francis King and Cyrus Bentley, as executors of and trustees under the last will and testament of Henry W. King, late of Chicago, Cook county, Illinois, deceased, third party, witnesseth:

"That, whereas, said Henry W. King departed this life April 13, 1898, and in and by his last will appointed third party the executors of and trustees under said will, which will has been duly admitted to probate in the probate court of Cook county, Illinois, letters testamentary upon said will for the administration of the estate of said Henry W. King having issued to third party out of said probate court of Cook county on the eighteenth day of April, 1898; and,

"Whereas, said will has been admitted to probate in and by the probate court in and for the city of St. Louis, in said State of Missouri, and first party claims the right of administration with the will annexed under said will in the State of Missouri; and,

"Whereas, said Henry W. King left no mansion house, place of abode or lands in the State of Missouri, but did leave an interest in certain personal property at the date of this agreement embarked in the business of selling at retail clothing, furnishing goods, hats and caps in St. Louis and in Kansas City, in said State; and

"Whereas, by the articles of copartnership establishing said firm of Browning, King & Company, which bear date the first day of January, A. D. 1895, it is provided that in case any party thereto (being the party of the second part hereto and said Henry W. King) should by death or otherwise be retired from

said partnership in any year prior to the termination of said partnership by lapse of time (the date of which termination was by said articles fixed and appointed for December 31, 1899), the right and obligation under said agreement of such retiring partner or of his estate should continue until the end of that year as if no such retirement had occurred and at the beginning of the next succeeding year the other parties thereto should have the right and privilege, but should not be bound, to purchase at private sale the interest of said retiring partner or of his estate in said partnership business for an amount and upon terms provided for in said articles; and the said Henry W. King, in and by his last will, referred to said provisions of said articles of partnership and directed his executors and trustees therein named to sell and dispose of his interest in said business, in accordance with the provisions of said articles, if his copartners should desire to purchase said interest in accordance with said provisions;

"Now, therefore, first party, in consideration of the agreements of second party and of third party, herein set forth, does agree with second party and third party, jointly, and second party and third party jointly, in consideration of the agreements of first party herein set forth, do agree with first party, as follows, that is to say:

"First: First party shall administer upon said estate in the manner provided by law and in accordance with the provisions of this agreement; but he shall appoint, and he does hereby appoint, Henry L. Hatch as his agent and representative in Kansas City, and Daniel C. Young as his agent and representative in St. Louis, and he shall co-operate with said Hatch and with said Young in all reasonable ways, consistent with the law, when and as requested by them respectively in reference to such administration and subject to the order of the probate court; an inventory and appraisement shall be made forthwith in Kansas City and also in St.

Louis; in Kansas City first party shall appoint one appraiser and one witness, and said Hatch two appraisers and one witness, and first party shall also have the right to be represented at the taking of the inventory by a clerk; in St. Louis first party shall appoint one appraiser and one witness, and shall have the right to be represented at the taking of said inventory by a clerk; and said Young shall appoint two appraisers, one of whom shall be James A. Harris, and one witness who shall be said James A. Harris. As soon as possible first party shall procure from the proper court or courts authority to sell to second party all interest of the estate of Henry W. King in the property aforesaid (both that in Kansas City and that in St. Louis) upon such terms (cash, or credit not exceeding twelve months), and for a price not less than the value according to said appraisement of the interest of the estate of said King in said property as second party shall desire, and the court shall approve, and immediately upon being authorized to make such a sale first party and second party shall consummate the same, and first party shall thereafter refrain from any interference with the business of said copartnership and pay over to second party all unexpended money derived from retail sales; at once upon receiving payment (in cash or in notes as above provided) first party shall pay and distribute the proceeds of said sale to third party. First party shall immediately procure authority from the proper court or courts to carry on the business aforesaid as the same has heretofore been conducted, both in Kansas City and in St. Louis, and shall permit the said Hatch in Kansas City, and the said Young in St. Louis to manage the business as in the two cities, respectively, pending the sale to second party above provided for, substantially in the same manner as the business in said cities has heretofore been carried on.

"Second: Second party and third party shall pay

to first party all his fees (including a reasonable attorney's fee) to which he shall be legally entitled from the estate of said Henry W. King, as well as his legal costs and expenses; and all such payments shall be made promptly as and when same are due and payable at law.

"Third: Second party and third party shall within five days after the execution and delivery of this agreement furnish to first party a bond of the American Surety Company, in the penal sum of one hundred thousand dollars, conditioned for the full and perfect indemnity of first party against all consequences flowing directly or indirectly from the performance by him of his undertakings above in this agreement expressed, and also guaranteeing to him the full performance by second party and by third party of all their undertakings and agreements in this contract expressed and to save and indemnify him from all debts or demands allowed against said estate."

Under this agreement the business of said concerns continued and the administrator of said estates proceeded until the fourth of May, 1898, when the following agreement was entered into between the public administrator, the surviving partners, and the executors of the said Henry W. King:

"Memorandum of agreement between W. C. Richardson, public administrator, etc., first party; W. C. Browning, E. W. Dewey, J. A. Bingham, E. C. Woodruff, J. S. Browning, Francis King, W. H. Browning and H. K. Browning, second party, and Aurelia R. King, Francis King and Cyrus Bentley as executors and trustees under the will of Henry W. King, deceased, third party:

"First: First party shall on this day turn over to second party all property of every character held by him as administrator of estates of Henry W. King & Company, Browning, King & Company, and Henry W. King, reserving only enough cash to pay and satisfy

his legal commissions, attorney fees, expenses and costs . of court in the matter of said estates. First party shall procure as soon as possible the completion of the appraisements and inventories in said estates and shall file the same in the proper court or courts and procure approval thereof and thereupon shall procure proper court order or orders authorizing sale at public or private sale of the assets (other than money) of said estates, and shall then turn over to second party any moneys remaining in his hands upon being paid his commissions, attorney's fees, expenses and costs aforesaid, which second party agree to pay at once upon the entry of such order of sale so far as the same shall then be ascertainable.

"Second: Second party and third party shall within two weeks after the date of this agreement deliver to first party their bond in the penal sum of one hundred thousand dollars, with the American Surety Company as surety, indemnifying first party against all debts of any of said estates and against any consequences directly or indirectly resulting to first party from the execution of this agreement by the first party or the performance of his obligations thereunder. Second party and third party shall at once upon the entry of the order of sale above provided for, deliver to first party receipts of second party and of the executors and beneficiaries under said will or their respective distributive shares of said estates.

"Third: It is agreed that first party shall be entitled to a commission of five per cent of the inventoried and appraised value of the property inventoried and appraised in said estates, and shall be entitled to such reasonable attorney's fees as shall be allowed by the court.

"Fourth: Time shall not be of the essence of this agreement, but it is understood that due diligence shall be used on all sides, to the end that this agreement may be carried into effect as speedily as possible.

"St. Louis, Missouri, May 4, 1898.

"This agreement shall not be construed as a surrender of possession by first party until the receipts and bond above provided for shall have been delivered and accepted. This agreement supersedes all prior agreements between the parties."

Under this last agreement the matter proceeded until about the thirty-first of May, 1898, when the inventories and appraisements of the estates having been completed, filed and approved, and the order for the sale of the assets made by the probate court, and the business in a condition to be consummated as contemplated in said contracts, the public administrator prepared and submitted to the other parties thereto written statements of the condition of the estate and of the proposed distribution of the assets thereof in words and figures as follows, to-wit:

PARTNERSHIP ESTATE OF HENRY W. KING AND COMPANY.

| | | |
|---|---|---|
| Total assets, cash, .................... | | $ 7,200.00 |
| Less costs of administration.......... | | 513.75 |
| Balance .......... ........... | . | $ 6,686.25 |

To be distributed as follows:

| | | |
|---|---|---|
| To Henry W. King's estate............$ | 2,407.05 | |
| To Wm. C. Browning ................. | 3,276.26¼ | |
| To Edward W. Dewey.. .............. | 307.56¾ | |
| To James A. Bingham ............. .... | 200.58¾ | |
| To John S. Browning ........ ........ | 160.47 | |
| To William H. Browning .............. | 153.78 375-1000 | |
| To Henry K. Browning .............. | 153.78 375-1000 | |
| To Francis King .:...... .............. | 26.74½ | $6,686.27 |

PARTNERSHIP ESTATE OF BROWNING, KING AND COMPANY.

| | |
|---|---|
| Stock of Goods .......... ...... ...... | $182,859.16 |
| Fixtures ...... .... ....: ............ | 6,322.50 |
| Accounts .... ... ..... :..... ............ | 15,435.18 |
| Cash Sales .......... ........ .......... | 25,440.90 |
| Cash, Hatch ...... ...... .......... .. | 453.77 |
| Good Will ........................... | 18,000.00 |
| Total ............. ....... .. | $248,511.51 |
| Less costs of administration .......... | 17,614.77 |
| Balance ...... ...... ........ | $230,896.74 |

To be distributed as follows:

H. W. King's estate:

| | | |
|---|---:|---:|
| Stocks | $ 74,366.75 | |
| Fixtures | 1,978.47 | |
| Good Will | 5,400.00 | $ 81,745.22 |

Wm. C. Browning:

| | | |
|---|---:|---:|
| Stocks | $101,221.29 | |
| Good Will | 5,400.00 | |
| Fixtures | 1,978.47 | $108,599.76 |

Edward C. Dewey:

| | | |
|---|---:|---:|
| Stocks | $ 9,502.42 | |
| Good Will | 3,600.00 | |
| Fixtures | 1,290.31 | $ 14,392.73 |

James A. Bingham:

| | | |
|---|---:|---:|
| Stocks | $ 6,197.23 | |
| Good Will | 1,350.00 | |
| Fixtures | 430.10 | $ 7,977.33 |

J. Scott Browning:

| | | |
|---|---:|---:|
| Stocks | $ 4,957.79 | |
| Good Will | 900.00 | |
| Fixtures | 215.05 | $ 6,072.84 |

C. E. Woodruff:

| | | |
|---|---:|---:|
| Stocks | $ —— | |
| Good Will | 1,350.00 | |
| Fixtures | 430.10 | $ 1,780.10 |

Wm. H. Browning:

| | |
|---|---:|
| Stocks | $ 4,751.22 |

H. K. Browning:

| | |
|---|---:|
| Stocks | $ 4,751.22 |

Francis King:

| | |
|---|---:|
| Stocks | 826.32 |

| | |
|---|---:|
| | $230,896.74 |

### ESTATE OF HENRY W. KING, DECEASED.

| | |
|---|---:|
| To Amount from H. W. King & Co. | $ 2,407.05 |

Amount from Browning, King & Co., as follows:

| | |
|---|---:|
| Stocks | $ 74,366.75 |
| Good Will | 5,400.00 |
| Fixtures | 1,978.47 |
| Total | $ 84,152.27 |
| Less costs of administration | 5,845.96 |
| Balance | $ 78,306.31 |

To be distributed to the executors of Henry W. King, deceased.

With these statements the administrator also sub-

mitted a list of the items included in said statements under the head of "Costs of Administration." Thereupon a controversy arose between the parties upon the claim of the public administrator for five per cent commission on the amount of the assets in each estate, and for $5,000 for attorneys' fees included in the items of said list. The propriety of these charges having been submitted to the probate judge in an informal way and he having expressed the opinion that the public administrator was entitled to five per cent commission on the assets of each estate, and that a charge of $5,000 for legal services rendered and to be rendered to the end of the administration would be reasonable; the statements of the estates of Browning, King & Company and Henry W. King were returned to the administrator with the words and figures: "St. Louis, May 31, 1898. Approved and accepted," written across the face of each and signed by the executors and surviving partners. Thereupon receipts were executed by each of the distributees for the aggregate amount coming to each as per said statements. All the assets of every kind were turned over to them as per the contract last aforesaid, except the cash reserved by the administrator to meet "Costs of Administration," and thereafter the settlements hereinbefore set out accounting for all the assets of each of the estates of Browing, King & Company and Henry W. King were filed as aforesaid, to which exceptions were filed as aforesaid, raising the issues which were tried below.

(1) The first contention of the exceptors is, that the public administrator had no right to take charge of the estate of Browning, King & Company, and hence the court erred in refusing to sustain all their exceptions to his settlements in said estate. In support of this contention we have been favored with a learned and ingenious argument by counsel for the exceptors, which has been well met and answered by counsel for the administrator. But a review of these arguments is

deemed unnecessary, for the simple reason that the contention is entirely outside the issues tendered by the exceptors and tried by the court below. The exceptions do not go to the right of the public administrator to administer upon said estate, but to the proper settlement of his administration thereof. The complaint is that as public administrator having those estates in charge, he is not making a correct settlement thereof in the particulars excepted' to. The exceptors' cause of action is based upon the assumption that the public administrator is rightfully administrator of said estate and the sole complaint is, that as such he is making a wrongful settlement thereof. This is their position and necessarily so. Even if the question of the authority of an administrator could be raised on his settlements, these exceptors would be in no position to raise it, after having in the solemn manner indicated in the statement not only recognized his right to administer the estate, but authorized him to do so, and had the same in fact administered by him according to their own wishes, and received the benefits of such administration. But as this question was not and could not be raised on these settlements, we will, without further comment, pass to the real questions raised by the exceptions.

(2)    The first and most important of which is: What commission is the public administrator entitled to for administering these estates?

By section 291, Revised Statutes 1899, it is provided that the public administrator "shall receive the same compensation for his services as may be allowed by law to executors and administrators, unless the court, for special reasons, allow a higher compensation."

In the case of a partnership estate administered by the executor or administrator of the individual estate of a deceased partner, such executor or administrator is required by statute to "keep said

partnership estate separate and distinct'' and to
''account and report in all respects for same as a sep-
arate estate. [R. S. 1899, sec. 57.]   To ''give bond,
in addition to the bond given by him as executor or ad-
ministrator, in a sum at least double the value of the
whole copartnership estate.''   To administer the same
in conformity ''to administrations in ordinary cases''
and to ''perform the same functions and duties, be gov-
erned by the provisions and be subject to the same pen-
alties, liabilities and actions, as other administrators
and their sureties.''   [Ib., secs. 61-67.]   By section 223
of the same act it is provided that, ''In all settlements
of executors or administrators the court shall settle the
same according to law, allow all disbursements and ap-
propriations made by order of the court, and all rea-
sonable charges for funeral expenses, leasing real es-
tate, legal advice and service, and collecting and pre-
serving the estate, and as full compensation for their
services and trouble a commission of five per cent on
personal property and on money arising from the sale
of real estate; and that a surviving partner or part-
ners, in administering upon the effects of the copart-
nership, shall be allowed a commission of three per cent
on the interest of the deceased partner for like services
and trouble.''   The last clause of this section prescrib-
ing the commission to be allowed a surviving partner
administering the partnership estate, is an amendment
to the original section, adopted in 1885 (Laws 1885, p.
25), enacted doubtless to suply a *casus omissus* in the
original section disclosed by the decision in Gregory v.
Menefee, 83 Mo. 413, decided at the October term, 1884,
of the Supreme Court, in which it was in effect held
that a surviving partner in settling up the partnership
estate was doing no more than his common law duty
and was entitled to no commission therefor, unless ex-
pressly given by statute, and that such surviving part-
ner did not come within the terms of this section, as
it then and now reads without this amendment.   This

clause of the section has nothing to do with, and has no bearing upon the question in hand. Nor does it at all follow that, because a surviving partner is allowed no commission under the section as it reads, without this clause, the administrator of a deceased partner administering the partnership estate is entitled to no compensation for his services under that statute. He sustains no such relation to the partnership estate as does the surviving partner. His interest in, power over, and duties in respect to that estate are wholly creations of the statute. The statute invests him with power to administer the whole of the partnership estate, requires him to give bond in a sum at least double the value thereof, to administer the same as a separate and independent estate in the same manner as all other administrators are required to administer the estates entrusted to them and to make settlement thereof, as they are required to do. And as upon all settlements of administrators of estates thus administered, the administrators are allowed as compensation for their services five per cent commission upon the value of the property administered, he, as much so as the administrator of any other estate, is included in the class to whom such commission is allowable. The compensation of each administrator is by the statute made commensurate with the responsibilities, duties and services required to be performed in each separate and distinct administration committed to him. The fact that when the partnership estate shall have been administered, a part of that estate may be distributed to the estate of the deceased partner, and as an asset of that estate may become subject to a commission in the administration of that estate, furnishes no reason for not allowing commission for services rendered in administering the partnership estate from which that asset was derived. The services in each estate are different, distinct and independent of the other—and by the statute compensation for the services in one is just as fully and amply

provided for as in the other, and as by the statute, the public administrator is allowed the same compensation as is allowed by law to other administrators, so his compensation is as amply provided for in the one estate as in the other, and it follows, that the court erred in sustaining the first exception to the public administrator's settlements in the estate of Browning, King & Company and in disallowing the credit of $12,432.13 for commission claimed in said administrator's first settlement of said estate, and committed no error in overruling the first exception to his settlements in the estate of Henry W. King, deceased.

(3) The next important question raised by the exceptions is upon the charges for legal advice and services contained in the first annual settlements. In the estate of Browning, King & Company, these charges amount to the sum of $3,855. In the estate of Henry W. King to the sum of $1,589.50. Total $5,444.50, of which amount $3,595 is embraced in the second, third and fourth exceptions to the settlement in the estate of Browning, King & Company, and $1,589.50 in the second and third exceptions to the settlement in the estate of Henry W. King. The remaining charges, amounting to $260, are not excepted to.

On the trial eight members of the St. Louis Bar, lawyers of high standing and of large experience in such matters, were introduced as witnesses as to the value of the legal advice and services rendered by the attorneys in the three estates. One Mr. Collins, on the part of the exceptors, testified that the value thereof was $2,500. Seven, Messrs. Given Campbell, Valle Reyburn, R. M. Nichols, P. Taylor Bryan, L. F. Ottofy, James A. Henderson and Leo Rassieur testified that the value thereof was $5,000. And so it appeared from the weight of the evidence that the actual value of the legal advice and services in the three estates was about the sum of $5,000, and that the aggregate amount of

the charges therefor in the settlement in the three estates ought not to have materially exceeded that amount.

If the charges be thus limited, this situation is presented: On the settlement in the two estates in question there would be an overcharge of $444.50 on this account, and if the charges for legal services in the three estates were apportioned by the administrator to each estate in the proportion which its assets bore to the assets in all three of the estates, as the evidence tends to prove, then there was an additional charge of about $107, for such services in the settlement of the estate of Henry W. King & Company, making a total amount of overcharges on this account in all the settlements of $551.50.

In the first annual settlement in the estate of Browning, King & Company the sum of $500 is charged for that amount paid an attorney for "drafting inventory and appraisement," and in the first settlement in the estate of Henry W. King is a charge of $50 for that amount paid an attorney "for drafting inventory." Neither of these charges comes legitimately under the head of "legal advice and services." This is mere clerical work, the duty of performing which is, by law, imposed upon the administrator, and for which he is compensated in the commission allowed him by law. The credits claimed for these amounts ought not to have been allowed. If legal advice or service was rendered in connection therewith, the value thereof must be reckoned as included in the legitimate charges for such advice and service. Hence the third exception to the settlement in the estate of Browning, King & Company ought to have been sustained, and the second exception to the settlement in the estate of Henry W. King ought to have been sustained as to said item of $50. If this had been done the credits claimed for legal advice and services would have been brought within the amount which the evidence showed the administrator

was entitled to on account thereof, and the settlements would have been purged of the overcharges therefor. That this was not done is the only error we find in the rulings of the court on the second, third and fourth exceptions to the settlement in the estate of Browning, King & Company, and on the second and third exceptions to the settlement in the estate of Henry W. King. This disposes of all the exceptions to the settlements in the estate of Browning, King & Company. The credits covered by these exceptions would doubtless appear more properly in the settlement of the estate of Henry W. King & Company, but as the exceptors are the sole beneficiaries in the same proportions, of both estates, the result to them would be the same whether the credits were taken in the settlements of the one or the other. So no prejudicial error was committed in overruling these exceptions.

From what has been said the conclusion is, that the judgments in both these cases be reversed, and that they be remanded to the circuit court with directions to adjust the final settlements of the public administrator with these estates, in accordance with the views expressed in this opinion, and certify the same to the probate court, and when this shall have been done, these estates will have been administered and settled by him just as these exceptors, the sole beneficiaries thereof, contracted with him that they should be administered and settled, and whatever exceptions others might take to this administration and settlement thereof, they have no cause of complaint.

All concur, except *Robinson, J.*, absent.